# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 74
The People &c.,
   Respondent,
  v.
Ronald K. Johnson,
   Appellant.

Timothy S. Davis, for appellant.
Kaylan C. Porter, for respondent.

WILSON, J.:

In *People v Taranovich* (37 NY2d 442 [1975]), we set out the factors to be weighed when considering whether pretrial delays rise to the level of a constitutional deprivation of the right to a speedy trial. In this case, the Appellate Division misinterpreted our test in several material ways. We therefore reverse.

- 1 -

I

The issue in this case is one of pre-indictment, not post-indictment, delay. Mr. Johnson's conviction stems from the sexual assault of a 14-year-old girl on October 4, 2006. The time between the crime and Mr. Johnson's indictment was nearly eight years.

The police found the victim lying on the street, intoxicated and unresponsive. They took her to the hospital, where she stated that she had met a 15-year-old male who supplied her with alcohol. She said she did not remember once she began drinking. The day after her admission to the hospital, the Rochester Police Department (RPD) submitted the victim's clothing and the evidence collected through the sexual assault kit to the Monroe County Crime Laboratory.

The victim remained in the hospital for more than one week. After her discharge from the hospital, RPD officers interviewed her again. During that interview, she identified the person with whom she was drinking the night of the assault as "Shamer." RPD officers showed her photo arrays containing a picture of Shamer (whose real name was known to the police), but she did not identify anyone in the photo arrays. The RPD then moved the case to "field" status, meaning that there were "solvability factors" present and the investigation would continue. An RPD officer tried to contact Shamer, but he was no longer residing at the address the RPD had for him. In January of 2007, lacking any further investigative leads, the RPD moved the case to "office" status, meaning that the RPD had no "current investigative leads" and would not work on the case absent new information.

In November 2007, thirteen months after receipt by the Monroe County Crime Laboratory, a forensic biologist in that office processed the victim's sexual assault kit and

clothing. The analysis detected sperm and semen on multiple swabs taken from the victim and on her underwear. According to the People, the lab faced a substantial backlog of cases for DNA testing.

The lab did not begin testing the victim's sample until December 2009. In January 2010, the lab entered the sample into the Combined DNA Index System (CODIS) database for comparison with DNA profiles for convicted offenders and persons with open case files. In February 2010, the lab was alerted that the samples taken from the victim matched the DNA profile in CODIS for Mr. Johnson; the lab notified the police of the match that same week. At this point, three years and three months had elapsed from the date of the assault.

The RPD reopened the case and assigned it to an investigator in April 2010. The investigator made two attempts to contact the victim by calling her mother. The mother said she did not have the victim's number and informed him that the victim no longer lived with her but that she would pass on the messages.[1] In January 2011, having failed to locate the victim, the investigator closed the case with the notation "victim uncooperative".

Almost two years later, in December 2012, the investigator received a phone call from a colleague whose wife happened to work as a counselor for the victim. The victim had told her counselor that she wished to pursue the case, which was relayed to the investigator by his colleague. The investigator met with the victim, who said she was unaware that the investigator had tried to reach her through her mother. The investigator

---

[1] The victim was in foster care and did not, at the time of these calls, live with her mother.

showed her a photo array containing Mr. Johnson's picture, but she identified one of the fillers as her potential assailant. Shortly thereafter, the investigator injured his knee and was out of the office for six weeks.

In August 2013, the case was assigned to an assistant district attorney. Between August and October 2013, the ADA unsuccessfully attempted to call the victim. In October, he recruited a different investigator to help him find the victim. That investigator located and met with the victim, at which time she identified Mr. Johnson as her assailant from a photo array. Three weeks later, the investigator met with and obtained a DNA sample from Mr. Johnson, who was incarcerated for an unrelated crime. Thereafter, the investigator attempted to reach the victim for several months but was unable to do so; her number was disconnected in November and was disconnected when he tried it again in February 2014. The ADA nevertheless scheduled a grand jury presentation for February 14. Although the victim was subpoenaed to appear and confirmed that she would do so, she arrived several hours late, and the ADA did not present the case to the grand jury.

At a subsequent meeting with the victim, the ADA realized that he was missing some of the police paperwork. The ADA also discovered that one of the officers involved in the case had passed away, and later realized that he required proof of Mr. Johnson's age, which he did not know, to establish the second count in the indictment, namely that the perpetrator was at least 18 years old. Eventually, he presented the case to the grand jury on June 4, 2014—7 years and 9 months after the crime. Mr. Johnson was indicted on one count of rape in the first degree and one count of rape in the second degree.

Mr. Johnson moved to dismiss the indictment, alleging that the delay in prosecution deprived him of his right to due process under the State and Federal Constitutions. Following a hearing regarding the delay, County Court denied his motion to dismiss and Mr. Johnson subsequently accepted the District Attorney's offer to plead guilty to the second-degree rape charge in satisfaction of the indictment.  Mr. Johnson was sentenced accordingly.  The Appellate Division affirmed the conviction (193 AD3d 1429 [4th Dept 2021]).[2]  A Judge of this court granted Mr. Johnson leave to appeal (37 NY3d 993 [2021]).

II

In *People v Taranovich*, we established the following five factors for assessing speedy trial claims: (1) the extent of the delay; (2) the reasons for the delay; (3) the nature of the underlying charge; (4) whether there has been an extended period of pretrial incarceration; and (5) whether there is any indication that the defense has been impaired by reason of the delay (37 NY2d at 445).  Although this case concerns pre-indictment delay and is analyzed as a due process claim, we nevertheless apply the test established in *Taranovich* (*see People v Vernace*, 96 NY2d 886, 887 [2001]).

The *Taranovich* framework is a holistic one—that is, "no one factor or combination of the factors . . . is necessarily decisive or determinative of the speedy trial claim" (*id.* at 445).  We have also noted that the factors must be evaluated "on an *ad hoc* basis" (*id.*)—meaning that the analysis must be tailored to the facts of each case.  Here, although reciting

---

[2] The Appellate Division dismissed so much of the appeal from the judgment as challenged the sentence, as Mr. Johnson had since been resentenced.

the *Taranovich* factors and correctly acknowledging our subsequent caselaw expounding on those factors, the Appellate Division deviated from our *Taranovich* framework in several significant ways.

With respect to the first factor, the length of delay, as we explained in *Taranovich* itself, while the greater the delay, the more likely the harm to the defendant, there is no specific length of time that automatically results in a due process violation (*id.* at 445-446). The Appellate Division noted that "the parties agree that the first factor favors the defendant" (193 AD3d at 1430).

As to the second factor, reasons for delay, these will vary from case to case, but we have explained that "a determination made in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons, will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense" (*People v Singer*, 44 NY2d 241, 254 [1978]; *Wiggins*, 31 NY3d at 13; *People v Decker*, 13 NY3d 12, 14 [2009]; *Vernace*, 96 NY2d at 888). The Appellate Division "assume[d], arguendo, that the People failed to establish 'good cause' for the 'protracted' preindictment delay" (193 AD3d at 1430). However, some examination of the reason for the delay is required. Instead of attempting to evaluate the good faith reasons for the various periods of delay, the Appellate Division's conclusion that the second factor favored Mr. Johnson is based upon an assumption for the sake of argument.

Turning to the third factor, the "nature" of the underlying crime can refer to both its severity and, relatedly, the complexity and challenges of investigating the crime and gathering evidence to support a prosecution (*see Singer*, 44 NY2d at 254; *People v Staley*,

41 NY2d 789, 792 [1977]). For example, in *Taranovich*, we noted that a prosecutor may need to be more thorough in preparing for a felony trial, as opposed to a misdemeanor (37 NY2d at 446). A few other relevant considerations include the availability and willingness of witnesses to testify or the availability and quality of evidence (*see e.g. Decker*, 13 NY3d at 15). Here, the Appellate Division held that its assumption that the People lacked good cause compelled the result that the "third factor[ ] favors[s] the defendant." The crime here—the sexual assault of a minor found unresponsive on a city street—is quite serious. The nature of the crime here is directly related to the issues of complexity and may, therefore, account for some of the delay: the victim's severe intoxication and lack of memory of the assault rendered her unable to identify her attacker. It is not clear on what basis the court concluded that its assumption of lack of good faith led to the conclusion that the third factor favored Mr. Johnson, but that conclusion, apparently based solely on that assumption with no analysis of the relevant concerns, is not supportable.

As to factor four (extended pretrial incarceration), Mr. Johnson was not incarcerated pretrial. He was, for some time between the crime and the indictment, incarcerated on a wholly unrelated matter, which time would not count under this factor.

In analyzing factor five, the Appellate Division held that because Mr. Johnson pled guilty only to rape in the second degree (Penal Law § 130.30 [1]), which depends solely on the age difference between the defendant and the victim, "the preindictment delay could not have 'impaired' defendant's ability to defend himself on the charge of which he was convicted" (193 AD3d at 1431). This was error. When an indictment contains multiple counts, if delay impacts the defendant's ability to defend one count, it may weaken that

defendant's position in plea bargaining, potentially adversely impacting the resulting plea.[3]

Thus, the appellate court must consider prejudice measured against all counts pending

when the dismissal motion is made, not merely against the crime of conviction.

The Appellate Division here misinterpreted the *Taranovich* framework and its

factual and legal review should be made under the proper framework.  Accordingly, the

order of the Appellate Division insofar as appealed from should be reversed and the case

remitted to the Appellate Division for further proceedings in accordance with this opinion.

Order, insofar as appealed from, reversed and case remitted to the Appellate Division,
Fourth Department, for further proceedings in accordance with the opinion herein.
Opinion by Judge Wilson. Acting Chief Judge Cannataro and Judges Rivera, Garcia,
Singas and Troutman concur.

Decided November 17, 2022

---

[3] On the facts of this case, we reject Mr. Johnson's other argument regarding potential prejudice, in which he asserts the delay prevented him from bargaining for a combined sentence in this and an unrelated case.  His highly speculative contention lacks any record support, in contrast to *Singer*, in which the prosecutor and defense counsel had discussed two close-in-time homicides in the context of negotiating a single disposition by plea and the prosecutor refused solely on the ground that the defendant had not yet been indicted on the matter in which the preindictment delay was challenged (44 NY2d at 255).